UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

(Alexandria Division)

GREGORY and CARLA DREW,                )
                                        )
        Plaintiffs,                     )
                                        )
v.                                      )   C.A. # 1:20-cv-736 (CMH/IDD)
                                        )
C. T. IRBY, *et al.*,                   )
                                        )
        Defendants.                     )

_____

MEMORANDUM IN SUPPORT OF
PLAINTIFFS' MOTION *IN LIMINE*

_____

Victor M. Glasberg, #16184
Nickera S. Rodriguez, #95952
Victor M. Glasberg & Associates
121 S. Columbus Street
Alexandria, VA  22314
703.684.1100 / Fax: 703.684.1104
vmg@robinhoodesq.com
nsr@robinhoodesq.com

Counsel for Plaintiffs

# Table of Contents

The Function of Adjudications *In Limine*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.    Defense Evidence That Should Be Barred . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.  Antecedent and Post-Arrest Events Unknown to Deputy Irby  . . . . . . . . . . . . . . . . 2

    B.  DX 20 & 21: Post-Fact Police Reports . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    C.  DX 22: Dep. Irby's Incident Report . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    D.  DX 23: Statement of Dep. Smith . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    E.  Testimony or Argument Bearing on Defendants' Liability for Damages. . . . . . . . . . 7

    F.  Testimony to the Effect That Plaintiffs' Expert Has
        Testified for Plaintiffs in Cases Lost by the Plaintiffs  . . . . . . . . . . . . . . . . . . . . . 7

    G.  Reference to Mr. Drew's Youthful Arrest for Marijuana Possession
        Or The Drews' Charges for Driving Over the Speed Limit . . . . . . . . . . . . . . . . . . . 7

    H.  The Testimony of Defense Expert Perry Bartels  . . . . . . . . . . . . . . . . . . . . . . . . . 8

        1.  Mr. Bartels' Opinions on Deputy Irby's Actions
            Lack a Proper Factual Basis. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

            a)  The Tasing of Greg Drew  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

            b)  The Search of Carla Drew . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        2.  Mr. Bartels Uses a Flawed Methodology Based on
            Misstatements of Applicable Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

            a) Law *re* Arrest of Greg Drew for Obstruction of Justice. . . . . . . . . . . . 14

            b)  Law *re* "Risk" and Hypothetical Threat . . . . . . . . . . . . . . . . . . . . . . . 15

II.    Specific Bartels Opinions or Statements to be Barred . . . . . . . . . . . . . . . . . . . . . . . 16

    A.  Referring to the Incident at the Drew Home As A
        "Domestic Assault" or "Domestic Violence" Incident . . . . . . . . . . . . . . . . . . . . . . 17

B.  Stating or Implying That Dep. Irby Felt
Threatened By Greg Drew's Behavior . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

C.  Testimony That Greg Drew "Forcefully Pulled Away" . . . . . . . . . . . . . . . . . . . . . 18

III.     Plaintiffs' Trial Exhibits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

<u>Defendants' Proposed Trial Exhibits at Issue</u>                    <u>Page</u>

DX 7                                                                 3

DX 13 and 16                                                         3

DX 15                                                                3

DX 20 and 21                                                         5

DX 22                                                                5

DX 23                                                                6

<u>Plaintiffs' Proposed Trial Exhibits at Issue</u>

PX 4                                                                 19

PX 6 and 8                                                           19

PX 10                                                                20

PX 11                                                                20

PX 12                                                                21

PX 14                                                                21

PX 19                                                                21

PX 20(a) and (b)                                                     21

<u>Exhibits Submitted in Support of This Motion</u>

Exh. 1          Irby depositions excerpts

Exh. 2          Bartels expert report

Exh. 3          Smith interrogatory answers

Exh. 4          Smith deposition excerpt

Exh. 5          Bartels deposition excerpt

Plaintiffs Greg and Carla Drew, by counsel, move this court for an order *in limine* regulating proposed evidence in this case, which is set for trial to begin July 6, 2021. In support of this motion, Mr. and Ms. Drew respectfully represent as follows:[1]

The Function of Adjudications *In Limine*

Preliminary questions concerning the admissibility of evidence are to be resolved by the court. Fed. R. Evid. 104. Evidence that is not relevant is not admissible. Fed. R. Evid. 402. Relevant evidence relates only to those facts that are "of consequence to the determination of the action." Fed. R. Evid. 401. Whether a fact is of consequence is determined by the applicable substantive law. *Sherrod v. Berry* 856 F.2d 802, 804 (7th Cir. 1988) (*en banc*); *see United States v. Hall*, 653 F.2d 1002, 1005-06 (5th Cir. 1981). Even relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Fed. R. Evid. 403. It is easier to adjudicate such matters outside of the context of a jury trial, thus this motion.

Three categories of exhibits are attached. Defendants' proposed trial exhibits at issue are labeled "DX___." Plaintiffs' proposed trial exhibits at issue are labeled "PX___." New exhibits submitted to the court in support of this motion are labeled "Exh.___." Except for the Adult Detention Center booking video (PX "D") previously repeatedly submitted to chambers in conjunction with the parties' motions for summary judgment, all exhibits are included in the accompanying documentary appendix, with hard and electronic copy to chambers.

---

[1] This motion is filed following counsel's discussions, most recently on June 1, 2021, in an effort to resolve the matters addressed herein.

I.  Defense Evidence That Should Be Barred[2]

A.  Antecedent and Post-Arrest Events Unknown to
Deputy Irby:  Defense Exhibits 7, 13, 15 and 16

Evidence of matters of which Deputy Irby was ignorant when he engaged in the actions

contested in this lawsuit is inadmissible in this case.

In Fourth Amendment cases such as this alleging unreasonable seizure, what matters is

the reasonable perception of the officer at the time of the seizure or use of force. This does not

include anything of which the officer was ignorant at the time. *Graham v. Gagnon*, 831 F.3d

176, 184 (4th Cir. 2016) ("[W]e do not impute factual knowledge to the officers that they did not

have or that was not reasonably available to them.")

Defendant Irby is free to testify to everything he knew or reasonably believed up to and

including the point at which he engaged in the use of force and arrests here at issue.  But he

cannot rely on matters of which he was concededly ignorant, as these cannot justify anything he

did.  For this reason, evidence of matters regarding the Drews and their behavior unknown to

defendant Irby when he detained, tased and arrested Mr. Drew or arrested Ms. Drew has no place

at trial.  *See, e.g.*, *Garrick v. Kelly*, 649 F.Supp. 607 (E.D. Va. 1986), *aff'd* 842 F.2d 1290 (4th

Cir. 1988) (in assault and battery case, evidence that the defendant assaulted the process server

inadmissible).  Defendants' proposed trial exhibits at issue are as follows:

---

[2]The bar sought to be raised here would not apply should the Drews open the door to
such evidence, but this is not to be anticipated.

<u>DX 7: Dwayne Baker statement dated October 2, 2018</u>.

Dep. Irby obtained this statement from the 911 caller, Dwayne Baker, four days after the Drews' arrests. The statement, which is hearsay, was not in existence when Dep. Irby made his arrests. Dep. Irby, who never spoke with Mr. Baker before interacting with the Drews, could not have relied on this statement, or on anything in it that he did not learn from the dispatcher before going to the Drews' home.

<u>DX 13 (pp. 159-60) and 16: Recording of 911 call and transcription thereof</u>.

Dep. Irby did not receive the 911 call. While he can rely on what was separately passed on to him by the dispatcher,[3] the 911 call itself is inadmissible since he was not privy to it. *See Estate of DiPiazza v. City of Madison*, 2017 WL 1910055 at *2 (W.D. Wis. May 8, 2017) (evidence of information provided during 911 call excluded unless relayed to responding officers). The 911 call is also inadmissible because it is hearsay that presents a form of character evidence or evidence of alleged prior bad acts regarding the Drews. Both uses are impermissible under Fed. R. Evid. 404.

<u>DX 15: In-car video and audio of Dep. Irby's transport of Greg Drew to jail</u>.

In this video, Mr. Drew is furious at defendant Irby for what he has done, and verbally abusive in expressing his anger. The video is objectionable on two grounds. It records post-arrest information only, which does not capture anything on which Dep. Irby could have relied

---

[3]The Drews have not objected to the portion of defense exhibit 13 comprising dispatcher communications of which Dep Irby was aware (Exh. 13, pp. 161-62).

before tasing and arresting Mr. Drew.  The video's content is irrelevant to the objective

reasonableness of Dep. Irby's prior actions.[4]  The video, which exemplifies Greg Drew's vitriol

over Irby's conduct, risks implying that this was his demeanor before, not only after, being tased,

and in general painting him in an unattractive light, thus creating sympathy for Dep. Irby.  Such

prejudice must be avoided.  The fact that Greg Drew was swearing at Dep. Irby *after* he was

tased and arrested, and *because* he was tased and arrested, does not bear on whether the tasing

and arrest were  constitutionally permissible in the first place: the issue facing the jury.  And the

implication, even if *sub rosa,* that Mr. Drew was acting this way before he was tased is

calculated to mislead the jury, given that Dep. Irby concedes that before he went hands-on with

Mr. Drew, neither Greg nor Carla Drew did anything he considered threatening:

> Q:      Before you determined to detain  Mr. Drew, did either of the Drews take any
>
> action that you thought was aimed at you and put you in any kind of
>
> jeopardy?
>
> A:      Overt action?
>
> Q:      Yes, sir.
>
> A:      Overtly, no.     ***
>
> Q:      [D]id either of them engage you physically in any way; in other words, take any
>
> threatening step towards you in any way; raise a fist?

---

[4]In *Cansler v. Hanks,* No. 1:16-cv-1589, ECF 124 at 3, ¶e, the defendant police officer sought to admit evidence of the resistence of the plaintiff after he had been tased and brought to the police station.  Judge O'Grady disallowed the evidence for the reasons set forth above.

A:      No.  I mean, Mr. Drew stepped out onto the step closer to me, but I didn't

perceive it as a threat.

Exh. 1 attached hereto at 135:7-13; 139:4-8.


### B.  DX 20 & 21: Post-Fact Police Reports

These are Use of Force Reviews prepared by third parties five days after Dep. Irby

arrested the Drews.  Neither of the authors was present when Dep. Irby seized Mr. Drew, tased

him, arrested him, or arrested Ms. Drew.  Both reports conclude that the tasing was "reasonable

and within policy limits."  DX 20 at 2, Ex. 21 at 3.

These reports are hearsay statements, and their descriptions of what defendant Irby told

the authors present hearsay within hearsay.   The conclusions reached in each report, to the effect

that the tasing was "reasonable and within policy limits," amount to opinions that are the

province of expert witnesses.  Both authors could have been identified as in-house experts to

render opinions regarding the reasonableness of defendant Irby's conduct.  Neither was.  Their

reports and any testimony to the same effect should be excluded.


### C.  DX 22: Dep. Irby's Incident Report

Dep. Irby's written narrative of what happened at the Drew home should be excluded as

hearsay, and duplicative hearsay at that, as Dep. Irby will testify to what happened.  If need be,

he can refer to his report to refresh his recollection.  But admitting the report itself amounts

simply to impermissible bolstering of his in-court testimony.  The observations of the court in

*Mowrey v. City of Fort Wayne*, 2013 WL 6512664 (N.D. Ind. Dec. 12, 2013) are on point here:

> The reliability of police reports is neither automatic nor presumed. Police reports of any kind are inherently more subjective than laboratory reports of chemical tests, and ... a police officer's description of events as he witnessed them lacks ... objective certainty. They may be demonstrably reliable evidence of the fact that an arrest was made, [but] they are significantly less reliable evidence of whether the allegations of criminal conduct they contain are true. Indeed such evidence is dripping with motivations to misrepresent and accordingly lacks the trustworthiness necessary to qualify under the business records exception.

*Id.* at *2 (internal quotation marks and citations omitted). Beyond these dispositive considerations, everything in the report that discusses matters after Greg and Carla Drew were placed under arrest must be excluded, as that information does not bear on the reasonableness of Dep. Irby's conduct at issue.

### D. DX 23: Statement of Dep. Smith

This is a statement prepared by Dep. Smith months after his contested search of Carla Drew's body. Far from a contemporary account of what happened, it is a self-serving hearsay justification by Dep. Smith of his actions following their being challenged. It will be cumulative of his live testimony in court. Dep. Smith cannot bolster his credibility by offering a statement prepared months after the fact to justify what he did. For the reasons set forth in *Mowrey*, *supra*, and as a matter of common sense and elementary evidentiary principles, the document is unreliable and prejudicial. It should not be admitted into evidence.

### E.  Testimony or Argument Bearing on Defendants' Liability for Damages

Should the Drews prevail, defendants will not be out of pocket one penny.  Their defense, and damages up to $1 million, will be covered by Virginia's Division of Risk Management.  Neither evidence nor argument nor implication that they may bear personal loss from a plaintiff's verdict can be permitted at trial.

### F.  Testimony to the Effect That Plaintiffs' Expert Has Testified for Plaintiffs in Cases Lost by the Plaintiffs

The success or failure of plaintiffs in other cases has no bearing on the weight to be assigned the evidence presented by the Drews' expert who testified in them.  This includes one case in this court.  The court will instruct the jury as to how it should assess plaintiffs' and defendants' expert witnesses, without reference to the outcome of prior cases.

### G.  Reference to Mr. Drew's Youthful Arrest for Marijuana Possession Or The Drews' Charges for Driving Over the Speed Limit

Mr. Drew was arrested a quarter century ago for possession of marijuana.  The charge was nolle prossed by the Fairfax General District Court.  This information is not admissible under Fed. R. Evid. 609.  There was no conviction; it was for a misdemeanor; it did not involve dishonesty or moral turpitude; and it occurred more than ten years ago.  The Drews have also been charged with some speeding violations.  In an abundance of caution, the undersigned notes that no mention of these offenses should be made at trial.

H. <u>The Testimony of Defense Expert Perry Bartels</u>

Defendants have identified Perry Bartels as an expert witness to testify to some of the contested matters in this case.[5] The Drews move to exclude his testimony in its entirety because it falls short of the requirements for expert evidence embodied in Fed. R. Evid. 702, *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589–90, 595 (1993) and *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 141–42 (1999).

Under Fed. R. Evid. 702, expert evidence is admissible if the evidence (a) will help the jury "understand the evidence or [] determine a fact in issue," (b) is "based on sufficient facts or data," (c) is the product of "reliable principles and methods," and (d) if the expert has "reliably applied the principles and methods to the facts of the case." Expert evidence is inadmissible where it is "excessively speculative or unsupported by sufficient facts"; its proponent must "show that the expert's reasoning or methodology was applied properly to the facts at issue." *Barrett v. Rhodia, Inc.*, 606 F.3d 975, 980 (8th Cir. 2010).

A judge "exercises more control over experts than over lay witnesses." Weinstein, *Rule 702 of the Federal Rules of Evidence is Sound; It Should Not Be Amended*, 138 F.R.D. 631, 632 (1991). Courts must probe the reliability and relevance of expert testimony any time its "factual basis, data, principles, methods, or their application are sufficiently called into question." *Kumho Tire*, 526 U.S. at 149. To fulfill *Daubert's* gate-keeping role, courts must examine the principles and methods employed by an expert and whether they have reliably applied them to the facts of the case. "[A]ny step that renders the analysis unreliable . . . renders the expert's testimony

---

[5]Mr. Bartels does not defend Greg Drew's arrest for public intoxication, Dep. Irby's entering the Drew home at Taser-point, his commanding Carla to get on the floor, and his arresting her for obstruction of justice.

inadmissible." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 745 (3d Cir. 1994). Mr. Bartels' proffered evidence fails this test. It is conducive to judicial economy for these matters to be resolved prior to trial rather than in a *Daubert voir dire* at trial.

> 1. Mr. Bartels' Opinions on Deputy Irby's
> Actions Lack a Proper Factual Basis

Expert opinion based on facts that are indisputably wrong is inadmissible. *E.E.O.C. v. Freeman*, 778 F.3d 463, 466 (4th Cir. 2015) (expert's opinion inadmissible where based on multiple factual inaccuracies in underlying data); *Lee v. City of Richmond, Va.*, No. 3:12CV471, 2014 WL 5092715, at *9-10 (E.D. Va. Sept. 30, 2014) (expert opinion on bullet trajectory inadmissible where expert ignored actual measurements in favor of assumptions that fit his mathematical model); *Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996) (excluding expert's forklift accident analysis where expert used incorrect forklift model). "Under settled evidence law, an expert may express an opinion that is based on facts that the expert assumes, but does not know, to be true. It is then up to the party who calls the expert to introduce other evidence establishing the facts assumed by the expert." *Williams v. Illinois*, 567 U.S. 50, 57 (2012). But an expert cannot base an opinion on contentions that are rejected by all parties, his client included.

> a) The Tasing of Greg Drew

Mr. Bartels' justification of Dep. Irby's tasing of Mr. Drew is impeached by his own client's presentation of both the context and the immediately precipitating cause of the tasing. Thus, Mr. Bartels claims that Mr. Drew's stepping onto the stoop "could indicate" that Mr. Drew is readying to "position himself for an assault on Deputy Irby." Exh. 2 at 8-9. But Mr. Bartels'

hypothetical "could indicate" – as to which *see* discussion *infra* at 15 – has been categorically denied by Dep. Irby in his deposition:

> Q: Before you determined to detain Mr. Drew, did either of the Drews take any action that you thought was aimed at you and put you in any kind of jeopardy?
>
> A: Overt action?
>
> Q: Yes, sir.
>
> A: Overtly, no. ***
>
> Q: [D]id either of them engage you physically in any way; in other words, take any threatening step towards you in any way; raise a fist?
>
> A: No. I mean, Mr. Drew stepped out onto the step closer to me, but I didn't perceive it as a threat.

Exh. 1 at 135:7-13; 139:4-8.

Mr. Bartels compounds his creation of useful details by claiming that as Dep. Irby undertook to handcuff Mr. Drew, Mr. Drew "forcefully pulls away from Deputy Irby. . . ." Exh. 2 at 10. But Dep. Irby has stated categorically that Greg Drew did nothing of the sort, and was freed from Dep. Irby's grasp because Dep. Irby let go of him to reach for his Taser.

> Q: [Y]ou have to access your Taser, and if I understand things correctly you have to step back a bit; is that correct?
>
> A: It [the Taser] could be applied at point blank range, but ideally you would want to step back.

Q:      Okay.  So you would in the ordinary course let go of the person?

A:      Yes.

Q:      Okay.  *Is that how he [Mr. Drew] came to be completely free from your hands?*

A:      *Yes*.

Q:      *As opposed to literally wrestling them away from you?*

A:      *Correct.*

Exh. 1 at 152:3-16 (emphasis added).

Mr. Bartels' focus on the alleged threat that "could" have been presented by Greg Drew's stepping to the stoop, and on Mr. Drew's allegedly "forcefully pulling away" from Dep. Irby's grasp, are material to Mr. Bartels' analysis – but they are figments of his imagination according to his own client, and they matter.   It is settled law that "noncompliance with police directives and nonviolent physical resistance" are not synonymous with a "threat to the officer's safety" sufficient to justify Taser use.  *Estate of Armstrong v. Village of Pinehurst*, 810 F.3d 892, 905 (4th Cir. 2016).   Nonviolent physical resistance – Mr. Drew's failure (within a second or two) to brings his wrists fully together behind his back – is precisely what Dep. Irby has described, in contrast to Mr. Bartels' elaboration.[6]  Such non-violent physical resistence is precisely what the *Armstrong* court rejected as a threat to officer safety constitutionally justifying Taser use.  Mr. Bartels should not be permitted to present his testimony to the contrary.  His unwarranted

_____

[6] These are not inconsequential details.  "Deploying a taser is a *serious* use of force. The weapon is designed to cause excruciating pain." *Armstrong,* 810 F.3d at 902.  Use of force is to be assessed  "with an eye toward the proportionality of the force in light of all the circumstances." *Id*. at 899.  A suspect "forcefully pulling away" from a deputy may well justify Taser use.  But noncompliance with orders and nonviolent resistance do not.  This is not merely an issue for jury instructions.  It goes to the admissibility of wrongly predicated expert testimony.

departures from the undisputed facts of this case do more than taint his entire report. On the particular point at issue – the justification of Greg Drew's tasing – they render his evidence inadmissible.

b) <u>The Search of Carla Drew</u>

Mr. Bartels excuses Dep. Smith's alleged groping of Carla Drew on this ground: "Mrs. Drew's shifting her body during the search was likely responsible for the change in Deputy Smith's hand position, causing contact with Carla Drew's breast." Exh 2 at 13. This hypothetical ("likely") testimony should not be permitted at trial.

What Mr. Bartels avows is categorically denied by Dep. Smith, who has repeatedly sworn that his left thumb remained at Ms. Drew's sternum throughout and that his hand did not end up touching either of her breasts "The back of my thumb touched, from the outside of her clothing, touched (*sic*) the underwire of Ms. Drew's bra and her sternum between her breasts. My hand did not touch her breasts." Exh. 3, #7. Here is his deposition testimony:

Q    Now, . . . you write: 'At no point did my hand or thumb move to the left or right while searching the underwire.'[7] I take it that that's consistent with what you've just described, that the back of your thumb was at Carla Drew's sternum and that you did not move your hand to the right or to the left of her breasts?

A    Correct.

Exh. 4 at 46:12-19.

---

[7]The quoted section is from Dep. Smith's description of his search of Ms. Drew written months after the fact. This proposed defense exhibit, DX 23, is addressed at 7, *supra*.

Mr. Bartels may attempt to take refuge in the contention that while Dep. Smith did not move his hand over Ms. Drew's breast, she moved her breast under his hand. This response is unavailable to him, however. Dep. Smith has presented no such defense in his discovery, whether written or oral, there is no other evidence supporting this claim, and Mr. Bartels cannot invent his evidence. Furthermore, any such contention is belied by the Adult Detention Center booking room video, which shows nothing of the sort. The video, previously twice submitted to the court by the Drews as Exhibit E on the parties' cross-motions for summary judgment, impeaches any claim that any movement by Ms. Drew thrust her breast under Dep. Smith's hand. Where a party's version of the facts "is so utterly discredited by the record that no reasonable jury could have believed him," as in the case of a video of the events at issue, a court should not "[rely] on such visible fiction; it should . . . view[] the facts in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 380-81 (2007). *See Witt v. West Va. Police, Troop 2*, 633 F.3d 272, 276 (4th Cir. 2011). For this reason, Mr. Bartels is disallowed from opining based on his "visible fiction."[8]

### 2. Mr. Bartels Uses a Flawed Methodology Based on Misstatements of Applicable Law

Expert testimony may also be barred if based on misstatements or misapplications of the applicable law. *See McKiver v. Murphy-Brown, LLC*, 980 F.3d 937, 962 (4th Cir. 2020) (excluding expert testimony that farm odors exceeded legal nuisance liability level where

---

[8]The source of Mr. Bartels' misstep is clear: he did not review the video when preparing his opinions. Exh. 2 at 5-6; Exh. 5 at 27:22-28:3. That was his prerogative, but the result is that his testimony on this issue cannot survive this court's gate-keeping function. Expert witnesses are not permitted to invent their facts and ignore indisputable ones.

government had not adopted objective measurement for same). *See also Lippe v. Howard*, 287 F. Supp. 3d 1271, 1282 (W.D. Okla. 2018) (excluding use of force opinion based on definition of excessive or deadly force inconsistent with existing law). Two of Mr. Bartels' opinions fall afoul of this rule.

a) Law *re* Arrest of Greg Drew for Obstruction of Justice

Mr. Bartels relies on Code of Va. § 18.2-460(A) to opine that Greg Drew's arrest for obstruction of justice was permissible. Exh. 2 at 10. But Mr. Drew was not charged with violating § 460(A) – a misdemeanor – but with violating § 460(C), a felony, with materially different, and markedly more stringent, elements. Mr. Bartels' justification of a felony arrest based on assessment of misdemeanor criteria amounts to an elaborate statue standing on feet of clay. It cannot be presented to a jury.

Nor can Mr. Bartels correct his mistake at trial. He has been presented to the court and to the Drews as a paid expert specially knowledgeable about the subject matter at issue. Fed. R. Civ. P. 26(a)(2)(B) requires production of a report that contains, among other things, "(I) a complete statement of all opinions the witness will express and the basis and reasons for them; [and] (ii) the facts or data considered by the witness in forming them. . . ." Litigating counsel are entitled to rely on what an expert submits in discovery. The gate-keeping issue for this court is whether his opinions provided during discovery, presaging his trial testimony, are admissible at all. An expert's analysis predicated on the incorrect standard is simply inadmissible. Here, Mr. Bartels has missed the boat.

### b) Law *re* "Risk" and Hypothetical Threat

The Drews agree that a reasonably perceived threat can give rise to an officer's need to take effective, proportionate, self-protective measures. But this does not legitimize Mr. Bartels' telling the jury, for example, that Mr. Drew's stepping onto the stoop "could indicate" that Mr. Drew is readying to "position himself for an assault on Deputy Irby," as he states in his report, Exh. 2 at 8-9. As noted, Dep. Irby flatly denied perceiving any such threat. Anything "could" happen. Mr. Drew's stepping to the stoop "could indicate" he deemed it polite to speak on a level field with his interlocutor. It "could indicate" he wanted to close the house door behind him to shield his discussion with a deputy sheriff from his young children. It "could indicate" all manner of things other than preparation for an assault of which neither the defense nor Mr. Bartels has come up with any evidence. The issue, as always, is not whether there is a risk that something "could" happen, but whether there are objective grounds to find an immediate threat of its happening. *Henry v. Purnell,* 652 F.3d 524 (4th Cir. 2011). No one has testified to the least threatening gesture or posture of Greg Drew, "dynamic" or otherwise: no bladed body, no raised fist, no verbal or physical challenge to fight – nothing except an aggravated tone aimed at a neighbor's calling 911. *See* Dep. Irby quotations at 5, *supra.* Where Dep. Irby has categorically denied feeling threatened by Mr. Drew's stepping to the stoop, Mr. Bartels cannot be permitted to suggest, out of thin air, that this "could" be a threat.

Mr. Bartels reasons that resistance that is "not intended to be dangerous" nonetheless presents a "risk [of] immediate injury" because of its "dynamic nature."[9] Exh. 2 at 11. Again, what matters is neither "risks" nor hypotheticals or possibilities – dynamic or otherwise – or any resulting subjective fears, but articulable, objectively ascertainable facts supporting the conclusion or action at issue. *Henry,* 652 F. 3d at 354. Mr. Bartels recognizes the difference between a risk and an actual threat:

Q:    [T]here's a risk getting out of bed and walking across the street, I guess.

A:    Exactly, exactly. So there's always risk, but there's not always an assessed threat.

Exh. 5 at 52:14-18; *see id*. 51:8-52:18) His appeal to inchoate "risks" facing Dep. Irby bespeaks his inability to identify objectively reasonable threats, sufficient under settled law, that might justify Dep. Irby's aggression towards Mr. Drew. He should not be permitted to appeal to such risks – nor can he change his story now.


II. Specific Bartels Opinions or Statements to be Barred

In the event Mr. Bartels is permitted to testify as regarding the issues addressed above, the Drews ask this court to prohibit him from testifying as follows:

---

[9]The term "dynamic" is not a talisman that shuts down judicial inquiry into the propriety of a given use of force. What matters are not adjectives, but reasonable conclusions based on articulable, objective facts. *Henry, supra.* Law enforcement officers "must do more than simply label a behavior as 'suspicious' to make it so." *United States v. Massenberg*, 654 F.3d 480, 491 (4th Cir. 2011). So too "dynamic." What law enforcement interaction between law enforcement officers and potential suspects might not be characterized as actually or potentially "dynamic"? Walking across a crowded street on a crosswalk may just as well be styled "dynamic."

### A. Referring to the Incident at the Drew Home As A "Domestic Assault" or "Domestic Violence" Incident

In his report, Mr. Bartels states, "Based on my training and experience, it is not uncommon that when police arrive after a domestic assault, those involved are calm and no injuries are visible." Exh. 2 at 7. This toxic and baseless reference to "domestic assault" is deeply prejudicial and should be disallowed. As Dep. Irby recognized in his own testimony, he perceived zero evidence of any domestic assault when he arrived and spoke with the Drews. Exh. 1 at 116:17-22. To the contrary, when defendant Irby asked Carla Drew, after her arrest, what she and her husband had been arguing about, she specified it was not a physical fight. There is no testimony *contra*. Nor, of course, was either Drew charged with domestic assault.

Like any other defense witness, Mr. Bartels can refer to the fact that Dep. Irby was called to investigate a loud and profane argument between the Drews. They can refer to a "domestic argument" if they see fit, but not to "domestic assault" or "domestic violence," as those deeply prejudicial terms refer to something that did not happen nor was it ever claimed to have happened by anyone, at any time.

### B. Stating or Implying That Dep. Irby Felt Threatened By Greg Drew's Behavior

Defendant Irby has testified that he did not consider anything Greg Drew did or said to be threatening to him. Exh. 1 at 135:7-13; 139:3-8 (quoted at 10-11, *supra*). Since Mr. Bartels is presumably testifying to the reasonableness of his client's observations, conclusions and decisions based on the information he had, Bartels cannot be permitted to base his opinion on an assumed perceived threat the client has confirmed did not exist. Mr. Bartels can state that Dep.

Irby believed Greg Drew was stronger than he was, and that Dep. Irby felt he could not get Mr.

Drew's wrists into handcuffs, for Dep. Irby has so testified.  But he cannot pile on considerations

disavowed by Dep. Irby.


### C.  Testimony That Greg Drew "Forcefully Pulled Away"

In his report, Mr. Bartels states that when Dep. Irby attempts to handcuff Mr. Drew, Mr.

Drew "forcefully pulls away from Deputy Irby. . . ."  Exh. 2 at 10.  As noted in several contexts

above, Mr. Bartels here conjures facts disavowed by Dep. Irby, who unequivocally states that

Mr. Drew did not wrestle out of his grasp, and that after attempting unsuccessfully to pull Mr.

Drew's wrists close together, Dep. Irby released his grip on him.  Mr. Bartels is free to base his

analysis on what his client has told him.  But he cannot counter-factually enhance it to his

client's benefit.

> Any [expert] assumptions must be disclosed and supported by
> evidence offered or to be offered at trial from which the jury could
> (although it need not) ultimately reach the same conclusion.  The
> court will not permit any expert testimony that fails to conform
> with this general and long-established paradigm.

*Estate of DiPiazza*, 2017 WL 1910055 at *5.  Since even Dep. Irby concedes that Greg Drew did

not "forcibly pull away" from him, Mr. Bartels may not suggest otherwise.


### III.  Plaintiffs' Trial Exhibits

Plaintiffs seek an *in limine* ruling regarding several of their exhibits objected to by

defendants.  The contested exhibits are attached hereto for the convenience of the court.

PX 4.  Plaintiffs have offered  five still photographs taken from the Fauquier County Adult Detention Center booking area video showing Deputy Smith's search of Ms. Drew. The video itself has been offered into evidence without objection, but the defense has objected to the still photos on the grounds of relevance, foundation and prejudice.

These photos are offered to corroborate Ms. Drew's claim that Deputy Smith groped her right breast during his search of her person.   Like the video from which they are taken, the photos disprove Deputy Smith's insistence that the back of his left thumb remained at Ms. Drew's sternum throughout.  The photos capture his fingertips to the right of her right breast and her immediate reaction.  The stills permit an efficient focus on the material portions of a lengthy video that the jury would otherwise have to play and replay to access.  *Cf.* Fed. R. Evid. 1006. The jury will be free, of course, to view the entire video, and will determine how much weight to give the stills.  But it is manifestly useful for counsel, the court, witnesses, and the jurors to be able to focus directly on what Ms. Drew claims as the offense, rather than having repeatedly to scroll and stop the video as needed.   The photos are no more prejudicial to Dep. Smith than the un-objected-to video from which they derive. The relevance objection is bizarre given that no objection was made to the video, which is in evidence without objection. The foundation objection will be addressed, if necessary, by counsel's paralegal who printed the photos from the video; she has been identified as a potential witness for this purpose.  This motion seeks to avoid just such time-wasting delays at trial.

PX 6 and 8.  These are videos that demonstrate the amount of time it takes to walk from the neighbor's house to the Drews' home, and to walk from where Ms. Drew was when Dep. Irby appeared to the front door.  This is important information, as together with sheriff's radio

traffic logs, it demonstrates the short period of time – literally a matter of seconds – Dep. Irby

spent at the Drews' front door before going hands-on with Greg Drew and immediately tasing

him.  The issue of time is central to the jury's assessment of the reasonableness of Dep. Irby's

recourse to force when responding to a complaint about a verbal argument and after having a

friendly conversation about the Drews' dog.

PX 10.  This is a series of three photographs demonstrating Carla Drew's response to

being faced with a Taser at her door, concluding with her lying down on the floor as ordered.

These photos afford the jury an opportunity to assess the layout of the premises and assess the

parties' competing claims on how far into the house Ms. Drew went following her husband's

being tased, and the reasonableness of Dep. Irby's proffered fears that she might secure a

weapon and do him harm.

Defendants have objected to these exhibits on the grounds of relevance, foundation,

hearsay, cumulative  nature, and prejudice.  ECF 53.  For the reasons set forth above regarding

Plaintiffs' Exhibit 4, these objections miss the mark.  Exhibit 10 gives the jury an accurate

understanding of the layout and dimensions of the Drews' foyer where Ms. Drew's claims

against Dep. Irby arose, and will fairly and helpfully illuminate her testimony.  Ms. Drew will

lay the proper foundation, hearsay is not implicated, the photos will exemplify what Ms. Drew

will testify to without being cumulative.  Dep. Irby admits to telling Ms. Drew to get on the

floor, so there is no prejudice.

PX 11.  This is a mannequin, wearing the same clothing that Carla Drew wore when

searched by Dep. Smith.  With the court's permission, Carla Drew will place her hands on the

mannequin as she contends Dep. Smith placed his hands on her, and Dep. Smith will place his

hands on the mannequin as he contends he placed them on Ms. Drew. The jury will be able to determine which of the two comports with the video. It is manifestly appropriate to proceed in this manner rather than proposing a demonstration using Ms. Drew as subject.

PX 12. This is an advertisement for the bra Ms. Drew was wearing. A sports bra, it lacks the underwire Dep. Smith claims he lifted at Ms. Drew's sternum. The lack of underwire will help the jury assess Dep. Smith's credibility. Since the bra itself will be underneath the T-shirt Ms. Drew was wearing, as in the photo of Exh. 11, this exhibit is superfluous if the mannequin, with its bra, is admitted into evidence.

PX 14. This is the document Mr. Drew received when going to Patient First urgent care for numbness in his left thumb following his tasing (on his left side). Mr. Drew will testify to having received it, in support of his claim to have sought and obtained medical care following his tasing.

PX 19. This is material dating from training received by Dep. Irby on Taser use. It will be the basis for examination of Dep. Irby and plaintiff's use of force expert at trial on the issue of generally accepted practices relative to Taser use and the extent to which Dep. Irby's conduct was consistent therewith. Such training materials, like sheriff's directives, do not set constitutional standards. But they can and should inform a jury's assessment of the objective reasonableness of a given Taser use.

PX 20(A) and (B). These two exhibits are very brief taser-training videos taken at law enforcement training facilities. They put into context, not to say impeach, Dep. Irby's testimony that when he was tased in training, it did not "hurt." Exh. 1 at 55:18-20. He is free to tell that to the jury, but Mr. Drew is entitled, in response and in support of his damages claim, not to have to

rely solely on a judicial instruction that "[t]he weapon is designed to 'caus[e]. . . excruciating pain.'" *Armstrong*, 810 F.3d at 902. Being tased is not something a typical juror is expected to have experienced or witnessed in ordinary life. The videos will help the jurors assess both the reasonableness of Dep. Irby's recource to his Taser, and Greg Drew's claim for damages.

Conclusion

For these reasons, plaintiffs' motion *in limine* should be granted.

> Respectfully submitted,
>
> GREGORY and CARLA DREW,
>
> By counsel

Dated: June 8, 2021

Counsel for Plaintiffs:

//s// Victor M. Glasberg
Victor M. Glasberg, #16184
Nickera S. Rodriguez, #95952
Victor M. Glasberg & Associates
121 S. Columbus Street
Alexandria, VA 22314
703.684.1100 / Fax: 703.684.1104
vmg@robinhoodesq.com
nsr@robinhoodesq.com
DrewGregCarla\Pleadings\MemMInLim

<u>Certificate of Service</u>

I, Victor M. Glasberg, hereby certify that on this 8th day of June 2021, I electronically filed the foregoing Memorandum In Support of Plaintiffs' Motion *In Limine* with the clerk of the court.

<u>//s// Victor M. Glasberg              </u>
Victor M. Glasberg, #16184
Victor M. Glasberg & Associates
121 S. Columbus Street
Alexandria, VA  22314
703.684.1100 / Fax: 703.684.1104
vmg@robinhoodesq.com

Counsel for Plaintiffs